# IN THE SUPERIOR COURT OF GUAM

BY:_____

| | |
|---|---|
| **PEOPLE OF GUAM** | **Criminal Case No. CF0447-23** |
| vs. | |
| **ALEJO C. SABLAN** *et al.*, | **DECISION AND ORDER** (Motion to Disqualify the Office of the Attorney General) |
| Defendant. | |

This matter came before the Honorable Alberto E. Tolentino on several dates in October and November 2023, for an evidentiary hearing on Alejo C. Sablan's ("Defendant") Motion to Disqualify the Office of the Attorney General (Sept. 1, 2023). At each hearing, Attorneys Joaquin C. Arriola, Jr. and William B. Brennan appeared on behalf of Defendant. At different hearings, the Office of the Attorney General was represented by one or more of Attorney General Douglas Moylan, Acting Chief Prosecutor Gloria L. Rudolph, Assistant Attorney General ("AAG") Lewis Harley, AAG Daniel Morris, AAG D. Graham Botha, and Special Assistant Attorney General ("SAAG") Joseph B. McDonald. Counsel for Defendant's co-defendants, as well as counsel for the Office of the Governor of Guam, were also present at some stages of the proceedings.[1] Having duly considered the parties' briefing and oral arguments, witness testimony, and applicable law, the Court hereby **GRANTS** Defendant's Motion.

---

[1] The Court notes the following counsel were also present for some of the proceedings:
On behalf of Defendant: Attorney Christine Arriola (Nov. 6, 2023);
On behalf of Co-defendant Ybanez: Attorney Sean Brown (Oct. 20, 2023), and Attorney Louie Yanza (Nov. 6, 2023);
On behalf of Co-defendant Badar Cruz: Public Defender Stephen Hattori (Oct. 20, Nov. 1, and Nov. 6, 2023);
On behalf of Co-defendant Susuico: Attorney Peter Santos (Nov. 6, 2023);
On behalf of the Office of the Governor of Guam: Attorney Jeffrey Moots (Oct. 20, 2023), and Attorney Leslie Travis (Nov. 1, 2023).

## BACKGROUND

Defendant is the former Chairman of the Board of Directors for the Guam Regional Transit Authority ("GRTA"). On July 3, 2023, a grand jury indicted Defendant on charges of Theft by Complicity (as a Second Degree Felony), Conspiracy for Misapplication of Entrusted Funds (as a Third Degree Felony), Misapplication of Entrusted Funds (as a Misdemeanor), and Official Misconduct (as a Misdemeanor), as well as a Special Allegation of Crime Against the Community attached to all four charges. *See* Indictment at 8-10 (Jul. 3, 2023). There are four co-defendants in this case, all of whom are connected to GRTA and all of whom face related charges.[2] It is alleged that co-defendant Richard Y. Ybanez, the former Interim Executive Manager of GRTA, was not legally qualified to hold that office; it is further alleged that Defendant conspired or was complicit in Ybanez illegally receiving the salary of that office. *See* People's Proposed Findings of Fact and Conclusions of Law ("Proposed FFCL") at 2 (Dec. 4, 2023).

On September 1, 2023, Defendant filed a Motion to Disqualify the Office of the Attorney General. Defendant argues the Office of the Attorney General ("OAG") has a disqualifying conflict of interest in this case because one division of the OAG is prosecuting this case while another division of the OAG has provided legal services to GRTA on this very issue. Mot. Disqualify (Sept. 1, 2023). On September 15, 2023, the People of Guam (the prosecutorial division of the OAG) filed an Opposition, arguing that disqualification was not warranted. On September 22, Defendant filed a Reply, reasserting conflict of interest principles and requesting an evidentiary hearing to determine whether a conflict wall was in place.

The case first came before this Court on October 4, 2023.[3] After a stipulation by the parties,

---

[2] The co-defendants are Richard Y. Ybanez, former Intermit Executive Manager for GRTA; Jennifer Badar Cruz, Certifying Officer for GRTA; Kevin J.T. Susuico, Director of the Board of Directors for GRTA; and Anthony P. Chargualaf, Vice-Chairman of the Board of Directors for GRTA. *See generally* Indictment (July 3, 2023).

[3] The case was originally before the Honorable Presiding Judge Alberto C. Lamorena III. However, on September 27, 2023, Presiding Judge Lamorena disqualified himself from the case. Form One – Disqualification (Sept. 27, 2023). The case was thereafter reassigned to this Court. Notice of Judge Assignment (Sept. 28, 2023).

the Motion to Disqualify was set to be heard on October 20, 2023. On that date, Defendant stated that he intended to call Chief Deputy Attorney General ("CDAG") Joseph A. Guthrie and AAG Thomas P. Keeler as witnesses. Min. Entry at 1:42:06 PM (Evidentiary Hearing, Oct. 20, 2023). However, neither of those individuals were present. *Id.* at 1:45:27 PM. The Court then continued the hearing to November 1, 2023. *Id.* at 1:52:09 PM.

On November 1, 2023, the Court heard testimony from CDAG Guthrie and AAG Keeler. During the testimony of CDAG Guthrie, the Court asked Acting Chief Prosecutor Rudolph to excuse herself from the hearing, as she was also a potential witness. Min. Entry at 4:07:41 PM (Evidentiary Hearing, Nov. 1, 2023). The hearing continued with AAGs Harley and Morris present on behalf of the People. After AAG Keeler completed his testimony, Defendant indicated he intended to call two more witnesses: Attorney General Moylan, and Ms. Maria Apuron. *Id.* at 5:05:57 PM. Because it was late in the day, the Court continued the hearing to November 6, 2023. In the interim, the People made several new filings.[4]

The hearing continued on the morning of November 6, 2023. There, Attorney General Moylan appeared for the People and requested immediate hearing of the motions the People filed on November 3, 2023. Ultimately, the Court denied the People's two *ex parte* motions as untimely. Min. Entry at 9:34:44 AM (Evidentiary Hearing, Nov. 6, 2023). The Court then took a one-hour recess. *Id.* at 9:43:36 AM. In the interim, the People filed a Renewed *Ex Parte* Application for a Protective Order and Motion to Seal Proceedings (Nov. 6, 2023), seeking to prevent Acting Chief Prosecutor Rudolph from testifying and to seal the continued motion hearing.

The hearing continued on November 6, 2023 at 10:55 AM. There, Attorney General Moylan

---

[4] These include a Memorandum Supporting *Ex Parte* Application for a Protective Order (Nov. 3, 2023); an *Ex Parte* Motion to Strike Protected Materials (Nov. 3, 2023); a Memorandum Supporting Motion *In Limine* for Legal Determination that Ethical Wall Unnecessary (Nov. 3, 2023); an *Ex Parte* Motion for Reconsideration of the Barring of the People's Attorney from the Case and to Strike All Evidence from the November 1, 2023 Hearing (Nov. 3, 2023); and Declarations from the Acting Chief Prosecutor (Nov. 3, 2023) and AAG Daniel Morris (Nov. 3, 2023).

and Defendant argued the recently-filed *Ex Parte* Application for a Protective Order and Motion to Seal Proceedings, as well as an oral motion by the People to quash a subpoena to Acting Chief Prosecutor Rudolph. The Court sealed the proceedings, denied the other motions, and decided that Acting Chief Prosecutor Rudolph would testify that afternoon. Min. Entry at 11:09:47 AM (Evidentiary Hearing, Nov. 6, 2023); *id.* at 11:26:32 AM. In the interim, the People filed a Memorandum (Nov. 6, 2023), arguing the subpoena issued to Acting Chief Prosecutor Rudolph was defective. The People also filed a Motion for Stay to File Emergency Writ (Nov. 6, 2023), requesting a stay to allow the People to request a writ of prohibition from the Supreme Court. Nonetheless, the hearing continued in the afternoon of November 6, 2023. There, SAAG Joseph McDonald appeared on behalf of the People.[5] Defendant objected that SAAG McDonald is not an Assistant Attorney General, but a private practitioner. Min. Entry at 1:38:32 PM (Nov. 6, 2023). SAAG McDonald explained that he had been asked by the People to make a limited appearance as a special prosecutor for purposes of this motion hearing, and that this was permissible under the relevant rules. *Id.* at 1:39:56 PM. SAAG McDonald registered another objection to Acting Chief Prosecutor Rudolph having to testify. *Id.* at 1:47:45 PM. The Court overruled the objection, and Acting Chief Prosecutor Rudolph gave her testimony. *Id.* at 1:49:37 PM. Defendant then called Maria Apuron, and she testified as well. *Id.* at 2:47:54 PM.

After the hearing was complete, the People filed a Notice of Filing Relevant Legal Authority (Nov. 28, 2023), and a Proposed FFCL on December 4, 2023.

---

[5] SAAG McDonald filed his Entry of Appearance as Special Assistant Attorney General two days later, on November 8, 2023.

4

## FINDINGS OF FACT

By a preponderance of the evidence, the Court makes the following findings of fact:

### Case Background

1. The Guam Regional Transit Authority (GRTA) is a public corporation within the Government of Guam, with "the exclusive franchise for the furnishing of public transportation within Guam and on its roads and highways." 12 GCA § 6102.

2. GRTA has a Board of Directors, 12 GCA § 6201(a), and one of the members of the Board is the Chairman, *see* 12 GCA § 6201(b). Defendant was, during the time periods relevant here, the Chairman.

3. The GRTA Board of Directors has the power to appoint an Executive Manager. 12 GCA § 6202(a). During the time periods relevant here, co-defendant Richard Y. Ybanez was the *Interim* Executive Manager of GRTA.

4. By statute, GRTA's Executive Manager shall "possess at a minimum, from an accredited institution, a Bachelors degree, preferably in the field of business administration, city planning, urban planning, engineering, engineering technology, public administration or closely related field or discipline." 12 GCA § 6202(a)(2).

5. It appears undisputed that Richard Y. Ybanez does not hold a Bachelor's degree.

### Structure of the Office of the Attorney General

6. "The Attorney General shall have <u>cognizance of all matters pertaining to public prosecution</u>, including the prosecution of any public officials." 5 GCA § 30104 (emphasis added).

7. The Office of the Attorney General conducts criminal prosecutions and brings criminal cases in the name of the People of Guam.

8. "Notwithstanding any other provision of law, the Attorney General shall have <u>cognizance of all legal matters</u>, excluding the Legislative and Judicial Branches of the government of Guam,

5

involving the Executive Branch of the government of Guam, its agencies, instrumentalities, public corporations, autonomous agencies and the Mayors Council[.]". 5 GCA § 30102 (emphasis added).

9. The Office of the Attorney General gives legal advice to government agencies through its "Civil Litigation" division, and formerly through its "Solicitor" division, which has now been merged with the Civil Litigation division. *See* Min. Entry 2:53:00 PM (Evidentiary Hearing, Nov. 1, 2023).

**The OAG's Representation of GRTA**

10. During the time periods relevant to the Indictment, AAG Tom Keeler was assigned to provide legal services to GRTA. AAG Keeler has been an assistant attorney general since approximately 2010, and has advised GRTA during that time. *Id.* at 4:21:50 PM.

11. AAG Keeler agreed with defense counsel's suggestion that GRTA was his "client" and that he accordingly owes GRTA a duty of confidentiality. *Id.* at 4:24:40 PM.

12. AAG Keeler never had regular communication with the members of the GRTA Board of Directors, including Defendant. *Id.* at 4:24:00 PM; *id.* at 5:04:20 PM.

13. AAG Keeler did have frequent communication with co-defendant Ybanez. At times prior to the commencement of criminal proceedings in this case, he communicated with Ybanez about the college degree issue. *Id.* at 4:41:30 PM.

14. On January 23, 2023, AAG Keeler corresponded with newly-elected Attorney General Moylan about pending matters with GRTA. Attorney General Moylan questioned Ybanez's qualification to serve as Interim Executive Manager. *Id.* at 4:28:40 PM.

15. On January 29, 2023, AAG Keeler sent an email to Attorney General Moylan and CDAG Guthrie outlining the issue. *Id.* at 4:31:00 PM. In response, Attorney General Moylan

indicated that they would "need to discuss this further" and "likely need to have a legal opinion out of fairness to Mr. Ybanez." *Id.* at 4:32:00 PM.

16. On February 7, 2023, AAG Keeler sent an email to Attorney General Moylan and CDAG Guthrie suggesting that Ybanez may meet a certain "years of service" requirement that would substitute for having a college degree. *Id.* at 4:44:10 PM; *id.* at 4:46:20 PM.

17. Shortly thereafter, AAG Keeler was removed from representation of GRTA by CDAG Guthrie, with no reason given, and assigned to another division. *Id.* at 4:57:15 PM.

**Investigation by the Government Corruption Division**

18. Acting Chief Prosecutor Rudolph initiated the investigation into GRTA. *Id.* at 2:00:50 PM. She did so after receiving a separate complaint about other alleged improper conduct by Interim Executive Manager Ybanez. *Id.*

19. Acting Chief Prosecutor Rudolph has had communications with Attorney General Moylan during the investigation of this case because Attorney General Moylan is her superior, and she "has to report to him." *Id.* at 2:03:50 PM.

20. The Indictment in this case was filed on July 3, 2023. Four days later, Defendant filed a Request for Discovery and Notice; Notice of Defenses (July 7, 2023). This included a request for "[a]ny and all discovery, evidence, or materials required to be provided to Defendant pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) . . . ." *Id.* at 2.

21. Because of this request for "*Brady* material," Acting Chief Prosecutor Rudolph directed Investigator Maria Apuron to communicate with AAG Keeler about obtaining discoverable material. Min. Entry at 2:15:25 PM (Evidentiary Hearing, Nov. 6, 2023).

22. On August 30, 2023, AAG Keeler met with Ms. Apuron. Acting Chief Prosecutor Rudolph was not present at this meeting. *Id.* at 2:16:25 PM. AAG Keeler turned over to Ms. Apuron

7

all of his "correspondence with GRTA." Min. Entry at 4:50:30 PM (Evidentiary Hearing, Nov. 1, 2023). This included copies of the emails mentioned above.

23. AAG Keeler understood the directive to produce these documents to be "coming from his superiors." *Id.* at 4:51:15 PM. He did not ask his superiors whether he was allowed to disclose these documents. *Id.* at 4:52:15 PM. He also did not have an attorney-client privilege waiver from GRTA to do so. *Id.* at 4:55:50 PM.

24. These documents were provided to Defendant in response to his Request for Discovery.

**Conflict Walls**

25. On April 17, 2023, CDAG Guthrie wrote and disseminated a memorandum on the use of conflict walls within the OAG. *Id.* at 2:55:00 PM.

26. A copy of this memorandum was filed with the Court prior to the hearing. People's Notice of Filing (Oct. 30, 2023). The memorandum is a form copy; it contains no specific information about screening procedures in this case. *See id.*

27. Acting Chief Prosecutor Rudolph described her understanding of how conflicts are typically handled at the OAG, which includes a notation on the physical file and in the OAG's record-keeping software that a particular individual is screened from the case. Min. Entry at 1:58:50 PM (Evidentiary Hearing, Nov. 6, 2023).

28. Acting Chief Prosecutor Rudolph testified that the Government Corruption division did not follow the OAG screening procedure in this case because it is unnecessary, as the division is physically sequestered from the rest of the OAG, does not interact with other divisions, and is so small that any conflict would be "right in front of their face." *Id.* at 1:49:45 PM. However, she testified that she does interact with Attorney General Moylan. *Id.* at 1:52:45 PM.

29. Acting Chief Prosecutor Rudolph, AAG Keeler, and CDAG Guthrie all testified that they were unaware if any conflict wall was in place for this case.

## DISCUSSION

**1. Legal Standard**

In Guam, "the current standard for attorney disqualification is whether an attorney's continued representation of a party or participation in an action violates or significantly risks violating the Guam Rules of Professional Conduct." *Barrett-Anderson v. Camacho*, 2018 Guam 20 ¶ 20. "[D]isqualification is a drastic course of action that should not be taken simply out of hypersensitivity to ethical nuances or the appearance of impropriety." *Id.* ¶ 14 (quoting *Roush v. Seagate Tech., LLC*, 58 Cal. Rptr. 3d 275, 281 (Ct. App. 2007)). However, disqualification is appropriate for "inevitable and material conflicts." *Id.* ¶ 17.

Defendant cites several rules, including GRPC 1.8 and GRPC 1.13(b) and (d), that may be implicated here. Mot. Disqualify at 2 (Sept. 1, 2023); Reply at 2 (Sept. 22, 2023). But Defendant's argument primarily turns on GRPC 1.7, which provides, in relevant part:

> (a) . . . a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
> (1) the representation of one client will be directly adverse to another client; or
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

**2. The Office of the Attorney General is Disqualified**

The question, under *Barrett-Anderson*, is whether the OAG's continued participation in this case would violate GRPC 1.7(a). Based on the following analysis, the Court concludes that it would. The OAG has a concurrent conflict of interest.

**A. The Guam Rules of Professional Conduct Apply to the OAG**

The Guam Rules of Professional Conduct apply to the attorneys of the OAG, including the

9

Attorney General himself. *See Barrett-Anderson*, 2018 Guam 20 ¶¶ 14-28 (analyzing an Assistant Attorney General's alleged conflict of interest); *People v. Tennessen*, 2009 Guam 3 ¶¶ 33-50 (analyzing the Attorney General's own alleged conflict of interest). Other jurisdictions are in accord. *See, e.g., Att'y General v. Mich. Public Service Com'n*, 625 N.W.2d 16, 27 (Mich. Ct. App. 2000) ("It is well settled that in the control of litigation, the Attorney General has the duty to conform his conduct to that prescribed by the rules of professional ethics." (quoting *Manchin v. Browning*, 296 S.E.2d 909 (W. Va. 1982)); *Chun v. Bd. of Trustees of Employees' Retirement Sys. Of State of Hawaii*, 952 P.2d 1215, 1237-38 (Haw. 1998); *see also* 7A C.J.S. Attorney General § 46, "Conflict Interests" (2024); 7 Am. Jur. 2d Attorney General § 17 (2024).

In general, the "rules of professional conduct are not to be mechanically applied" to the attorneys of the OAG, or to any other Guam attorneys. *Barrett-Anderson*, 2018 Guam 20 ¶ 24; *accord Chun*, 952 P.2d at 1236; *Michigan Public Service Com'n*, 625 N.W.2d at 33. Recognizing this, other jurisdictions have determined that the "unique nature" of their OAG (or its local equivalent) "allow[s] dual representation in certain circumstances not otherwise permitted in the arena of private practice." *See id.*; *State ex rel. Com'r of Transp. v. Medicine Bird Black Bear White Eagle*, 63 S.W.3d 734, 773-74 (Tenn. Ct. App. 2001). Guam has not so held; it has explicitly "reject[ed] the Attorney General's request for flexibility under the [GRPC] based on her unique position as the Chief Legal Officer of the Government of Guam." *Barrett-Anderson*, 2018 Guam 20 ¶ 24; *see also Santos v. Camacho*, 2006 WL 581251 * 7 (D. Guam Mar. 10, 2006). Thus, in Guam, neither the Attorney General nor OAG attorneys receive special, unwritten flexibilities under the GRPC. Instead, they are subject to the same rules of conduct, in largely the same manner, as other Guam attorneys.[6]

---

[6] *Barrett-Anderson* notes that the GRPC does have certain rules that afford flexibilities to government attorneys on certain issues. *See* 2020 Guam 20 ¶ 24 (citing GRPC 1.11, 3.6(d), 7.6). However, these rules do not affect the core issue here. GRPC 3.6(d) and 7.6 are facially inapplicable. GRPC 1.11 is relevant, but it does not provide any additional

Because the OAG is subject to the GRPC generally, it is subject to GRPC 1.7 specifically. That rule "prohibit[s] an attorney from representing a client whose interests are adverse to the interests of another former or current client." *Guerrero v. Moylan*, 2002 Guam 18 ¶ 49. The Court must therefore determine two things: first, whether this case involves two distinct "clients" of the OAG, and second, whether the interests of those two clients would conflict.

### B. This Case Implicates Two Clients of the OAG

It is undisputed for purposes of this case that one "client" of the OAG is the public interest. *See, e.g., In re Kline*, 311 P.2d 321, 390 (Kan. 2013) ("as Attorney General . . . his 'client' was the public."); *Levitt v. Attorney General*, 151 A. 171, 174 (Conn. 1930). The People have taken the position that the prosecutorial division of the OAG is the "law firm" that serves the public interest in criminal prosecutions. *See* Mot. *in limine* at 2 (referring to the prosecution as the "People's law firm"); *Ex Parte* Mot. Reconsideration at 2, 11 (Nov. 3, 2023) (describing disqualification as "depriving Plaintiff of its law firm"). Defendant has not argued otherwise. Since Guam law empowers the Attorney General to serve as the "public prosecutor" for Guam, 5 GCA § 30104, and to "conduct . . . the prosecution of all offenses against the laws of Guam," 5 GCA § 30109(a), the Court agrees that this is one "client" of the OAG.

The harder question is whether the OAG has a second "client" implicated by this case. The People argue that Defendant himself is not a client of the OAG because the OAG does not represent individuals. Opposition at 3. It is generally held that an attorney general does not represent private individuals, but rather the interest of the public as a whole. *See, e.g., Cebertowicz v. Madigan*, 48 N.E.3d 702, 706-07 (Ill. Ct. App. 2016); *Cliff v. Vacco*, 267 A.D.2d 731 (N.Y. App. Div. 1999). Moreover, the evidence presented does not suggest the formation of an attorney-client relationship

---

flexibility on the issue of conflicts; as discussed in more detail below, the rule provides that "a lawyer currently serving as a public officer or employee . . . is subject to Rules 1.7 and 1.9." GRPC 1.11(d)(1).

11

between the OAG and Defendant personally. AAG Keeler's uncontradicted testimony established that he rarely interacted with Defendant or the other members of the GRTA Board of Directors, and never communicated legal advice to Defendant directly. Thus, the Court agrees that Defendant himself is not a "client" of the OAG. But this fact is not dispositive, as Rule 1.7 is not limited to the circumstance where a law firm simultaneously represents both plaintiff and defendant in the same case. Concurrent conflicts of interest "can arise from the lawyer's responsibilities to another client, a former client or a third person or from the lawyer's own interests." ABA Model Rule Prof. Conduct 1.7, Cmt 1. Accordingly, adverse representation "can exist even though a prior client is not a party to the litigation." *American Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton*, 96 Cal. App. 4th 1017, 1039 (2002). Here, while Defendant himself is not a client of the OAG, the Guam Regional Transit Authority is a client of the OAG.

Whether an attorney-client relationship has formed is a question of fact, which necessarily "depend[s] upon the circumstances." *Guam Bar Ethics Committee v. Maquera*, 2001 Guam 20 ¶ 15. The attorney-client relationship between the OAG and GRTA is clear from both Guam's statutes and by the specific facts adduced at the evidentiary hearing. As a matter of statute, under 5 GCA § 30102, the Attorney General of Guam has "cognizance of all legal matters . . . involving the Executive Branch of the Government of Guam, its agencies, instrumentalities, public corporations [and] autonomous agencies . . . ." Accordingly, the Attorney General "is expected to provide legal services to those agencies that also are fiscally supported by the tax-base of the government of Guam." 5 GCA § 30201. And a legal relationship between the Attorney General and GRTA is contemplated by GRTA's enabling statute, which provides that GRTA "shall . . . enter into contract with the Attorney General to address legal issues." *See* 12 GCA § 6105(a)(8). These are strong indications that GRTA was intended to be a "client" of the OAG.

Moreover, the record here establishes that the OAG actually did provide legal services to

12

GRTA. AAG Keeler testified that he has advised GRTA, either directly or through his representation of the Department of Public Works, since approximately 2010. AAG Keeler testified that he often communicated with co-defendant Ybanez about legal issues. AAG Keeler even noted that Ybanez had "raised the issue" that forms the core of this criminal prosecution to him, and that AAG Keeler had "analyzed" the issue for GRTA at Ybanez's request. An attorney-client relationship has therefore been established between the OAG and GRTA. *See Mich. Public Service Com'n*, 625 N.W.2d at 28 ("when the Attorney General advises or represents another official, agency, or department, an attorney-client relationship is thereby formed, and the rules regarding professional conduct apply.").

### C. The OAG Has a Concurrent Conflict of Interest

Under GRCP 1.7(a)(2), a concurrent conflict of interest exists where "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." That is the situation here.

The conflict of interest in this case does not merely arise from the fact that the targets of the prosecution are executive branch employees. The issue is that the *subject* of the prosecution is official activity by the GRTA board—activity which the OAG was clearly aware of but did not advise GRTA to cease. As found above, GRTA is a client of the OAG. Thus, GRTA has the same right to "undivided loyalty" from the OAG as any client would expect from their attorney. *See White Eagle*, 63 S.W.3d at 773. In the context of concurrent conflicts of interest, loyalty is the "primary value at stake." *Metro-Goldwyn-Mayer, Inc. v. Tracinda Corp.*, 36 Cal. App. 4th 1832, 1839 (Ct. App. 1995). Yet it appears the People take the position that any duty the OAG owes to the "Government of Guam" (here, to GRTA) is subordinate to the OAG's duty to the public interest in criminal prosecution. *See*

13

Opposition at 3.[7] In so arguing, the People necessarily concede that they do not maintain, or intend to maintain, "undivided loyalty" to each client.

"Undivided loyalty" here would have, at minimum, required the OAG to advise GRTA that Ybanez serving as the Interim Executive Manager was contrary to law before the OAG commenced a criminal prosecution for that same conduct. It does not appear that any such advice was given. AAG Keeler, who was responsible for advising GRTA, apparently believed the conduct was not illegal. Attorney General Moylan apparently believed that this conduct may not be legal but suggested that a legal opinion on the issue was necessary "out of fairness to Mr. Ybanez." But no legal opinion was generated, and evidently no one in the OAG advised GRTA to cease its conduct, yet the OAG has prosecuted that conduct anyway. From these facts, the Court finds that OAG's representation of GRTA is materially limited by the OAG's pursuit of this prosecution. GRTA has a valid interest in receiving loyal, confidential legal representation. This is true of the organization as a whole, not merely its constituent employees. However, GRTA can no longer assume that the OAG will devote itself fully to protecting GRTA's legal interests, because clearly the OAG believes GRTA's interests are ultimately subordinate to the prosecutorial interest. The Court therefore concludes that the OAG has a concurrent conflict of interest under GRPC 1.7(a)(2).

### D. There Was No Conflict Wall

Guam case law suggests that the OAG can use "conflict walls" to avoid disqualification of the whole office. *See Tennessen*,[8] 2009 Guam 3 ¶ 36 ("Where conflict walls are effectively

---

[7] The People cite for this proposition an Order by the Honorable Joaquin V.E. Manibusan in the case of *Attorney General of Guam v. Pereira*, SP0032-03 (May 5, 2003). The Court reads *Pereira* to stand for the proposition that the OAG's duty to the public interest allows it to represent "adverse state agencies in intragovernmental disputes." *Id.* at 3. Whether or not that holding remains valid under the *Barrett-Anderson* standard, the case at bar is not a civil dispute between "adverse state agencies"—it is not a dispute *between* the OAG and GRTA. Rather, this is a criminal case based on actions which the OAG did not advise against yet seeks to prosecute criminally. This issue is more complex than the issue raised in *Pereira* cases, as well as all the legal precedent cited in *Pereira*, which is itself limited to disputes between "adverse state agencies." The Court thus finds *Pereira* too remote from the issue here to be persuasive.

[8] The Court recognizes that *Tennessen* was overruled in part by *Barrett-Anderson*, 2018 Guam 20 ¶ 19, but only "to the extent that [*Tennessen*] is inconsistent." The inconsistency between the cases involves the standard for evaluating

14

implemented, disqualification of the entire office may be unnecessary."); *People v. Santos*, 2018 Guam 12 ¶ 14. Assuming a conflict wall could have been viable here, "[t]he burden falls upon the government to show that the conflict wall provided an effective screen." *Tennessen*, 2009 Guam 3 ¶ 46 (citing *State v. Gonzales*, 119 P.3d 151, 163 (N.M. 2005)); *see also Santos*, 2018 Guam 12 ¶ 14 (raising "concerns about the effectiveness of a wall" screening the Chief Prosecutor).

Here, it appears no conflict wall was enacted. Although CDAG Guthrie testified about screening procedures at the OAG generally, he was unaware of any conflict wall existing in this case. AAG Keeler was also not aware of any conflict wall existing in this case, and he met with the People's investigator at the direction of Acting Chief Prosecutor Rudolph and disclosed email communications he'd had with Attorney General Moylan and CDAG Guthrie about the issue which forms this case. Acting Chief Prosecutor Rudolph testified that she was not aware of any conflict wall in this case, that the practice of the Government Corruption Division does not follow the general OAG conflict wall policy because the office is small and physically sequestered, and that she had been in communication with Attorney General Moylan about this case. Attorney General Moylan himself made an appearance in this case on November 6, 2023, to argue several motions. It is therefore clear that either no conflict wall existed, whether between divisions of the OAG or to screen off specific individuals from the case, or else it existed but was totally ineffective. Thus, the concurrent conflict of interest is imputed across the OAG, and the whole office must be disqualified from this prosecution.[9]

### 3. The Court Does Not Reach the People's Late-Raised Arguments

The People filed their Opposition on September 15, 2023. This was a timely filing, and the

---

disqualification, not the use of conflict walls. *See id.* ¶¶ 15-20. Since *Barrett-Anderson* did not address conflict walls, it did not overrule this portion of *Tennessen*.

[9] To be clear, the Court does not hold that Defendant or his co-defendants are immune from criminal prosecution. The court only holds that, due to the conflict of interest, the OAG itself may not conduct that prosecution. The Court's decision today expresses no opinion about the merits of this case, nor about the potential use of a special prosecutor.

arguments raised therein are therefore timely for purposes of this Decision and Order. However, the People have subsequently raised a litany of new arguments across their Memorandum Supporting Motion *In Limine* for Legal Determination that Ethical Wall Unnecessary (Nov. 3, 2023) and Proposed FFCL (Nov. 28, 2023). These include:

(1) Whether the Legislature has waived any potential conflict of interest that might arise from the Attorney General's dual role of Chief Legal Officer and Public Prosecutor (first raised in Mot. *in limine* at 6);

(2) Whether disqualification of the OAG would violate the "separation of powers" doctrine (first raised in Mot. *in limine* at 8);

(3) Whether a "conflict wall" is ever required for the OAG (first raised in Mot. *in limine*, at passim);

(4) Whether the law recognizes an "after-the-fact" reliance on counsel defense (first raised in Proposed FFCL at 15);

(5) Whether the lack of an official OAG "Opinion" under 5 GCA § 30107 nullifies a potential advice-of-counsel defense (first raised in Proposed FFCL at 19);

(6) Whether there is evidence that non-disqualification would prejudice Defendant's fair trial rights (first raised in proposed FFCL at 21);

(7) Whether the Motion to Disqualify should be deemed an improper "tactical" motion (first raised in proposed FFCL at 21-22).

However, the Court finds these arguments untimely for purposes of this motion. Local Rule of the Superior Court, Criminal Rule ("CR") 1.1(b)(1) contemplates that briefing includes only a motion, opposition, and reply. The People had an opportunity to raise these arguments in their Opposition, but did not do so. Accordingly, the Court views the Motion *in* limine, and the new legal arguments presented in the Proposed FFCL, as tantamount to an unauthorized sur-reply. Unauthorized sur-replies offering new arguments are disfavored. *See U.S. Bank Trust, N.A. v. Rudick*, 156 A.D.3d 841, 842 (N.Y. App. Div. 2017); *Harkey v. U.S. Bank, N.A.*, 2015 WL 300271 * 1 (D. Nev. Jan. 21, 2015) ("Surreplies are highly disfavored . . . ."); *Hill v. Assuranceforeningen Skuld (Gjensidig)*, 2017 WL 930060 * 14 n.1 (D. Guam Mar. 9, 2017) (noting a sur-reply was stricken and citing authority showing a court has the discretion to do so). Therefore, the Court declines to analyze the issues raised for the first time in the Motion *in limine* and/or in the Proposed FFCL, and limits its analysis

to the issues timely raised in the People's Opposition.

**CONCLUSION**

Based on the above analysis, the Court concludes that the Office of the Attorney General's continued representation in this case will violate GRPC 1.7. The conflict of interest has not been mitigated by the imposition of an effective conflict wall. Therefore, Defendant's Motion to Disqualify the Office of the Attorney General is **GRANTED.**

**SO ORDERED** this _____ APR 2 5 2024 _____.

**HONORABLE ALBERTO E. TOLENTINO**
Judge, Superior Court of Guam